UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM E. SHARP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01788-LJM-DML |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff William E. Sharp ("Sharp") requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security Administration (the "Commissioner"), which denied Sharp's applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382(c).  Sharp asserts that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence of various medial sources.  The Commissioner contends that the ALJ properly distributed weight to each of the medical opinions in the record.

### I. BACKGROUND

### A. PROCEDURAL HISTORY

On October 14, 2009, Sharp filed an application for SSI, alleging disability as of December 31, 2001.  R. at 376-379.  Sharp's application was denied initially on February

10, 2010, R. at 171, and upon reconsideration on May 10, 2010. R. at 172. Sharp timely requested a hearing before the ALJ on June 2, 2010. R. at 236.

On May 4, 2011, the ALJ held a hearing, at which Sharp, who was represented by counsel, and a vocational expert testified. R. at 132-166. On September 13, 2011, the ALJ found that Sharp was not disabled. R. at 173-191.

Sharp timely filed a Request for Review of Hearing Decision on October 7, 2011, R. at 270-271. On January 17, 2013, the Appeals Counsel granted Sharp's Request for Review, vacated the ALJ's prior decision, and remanded the case for further administrative proceedings. R. at 192-195. The ALJ held hearings on June 19, 2013, and April 9, 2014, at which Sharp (represented by counsel), vocational expert Constance Brown ("VE"), and medical expert Dr. James Brooks each testified. R. at 69-131. The ALJ issued a decision on May 29, 2014, finding that Sharp was not disabled. R. at 42-68. Sharp submitted a timely Request for Review of Hearing Decision to the Appeals Council on June 6, 2014, R. at 16, and the Appeals Council denied Sharp's Request for Review on September 10, 2015, making the ALJ's decision the final decision of the Commissioner. R. at 1-7.

On November 13, 2015, Sharp filed the instant appeal pursuant to 42 U.S.C. § 1382(c).

## B. RELEVANT MEDICAL EVIDENCE[1]

### 1. <u>Treatment Records</u>

In 2006, Sharp began seeking treatment for back pain that he attributed to a workplace accident that occurred in 1990. R. at 573, 592, 601. On April 24, 2006, Sharp obtained a magnetic resonance imaging report ("MRI") that "demonstrate[d] lumbar degenerative disc disease at L4-5 and L5-S1." R. at 601. The MRI showed moderate left paracentral disc herniation with inferior extension at the L5-S1 level, which caused impingement of the left S1 root. R. at 544-545, 582-583. Additionally, the MRI displayed posterior annular fissure with disc protrusion that abutted but did not cause significant displacement of the thecal sac, and mild foraminal narrowing at the L4 and L5 levels. *Id.*

On May 8, 2006, Sharp presented to Thomas M. Reilly, M.D. ("Dr. Reilly") of the Indiana Spine Group. *Id.* Dr. Reilly prescribed Lortab, a short course oral steroid, and Naprosyn; outlined a home exercise program; and offered formalized physical therapy to treat Sharp's back pain. *Id.* Dr. Reilly further indicated that if Sharp continued to experience pain, he would require nerve root injections. *Id.*

Sharp obtained an updated MRI of his lumbar spine on February 12, 2008. R. at 579, 647, 723-24, 793-94. The updated lumbar MRI revealed a slight decrease in the size of the left central herniation at L5-S1 from the previous MRI on April 24, 2006. *Id.*

On February 20, 2008, Sharp again appeared for a spine consultation at the Indiana Spine Group where he was diagnosed with lumbar degenerative disc disease,

---

[1] In his application, Sharp alleged both mental and physical impairments. However, Sharp did not address his mental impairments in his Brief, any arguments relating to his mental impairments have been waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

facet arthropathy, and lumbar spondylosis. R. at 589, 600, 607. He was referred for a lumbar epidural injection and facet injection. *Id.*

On March 4, 2008, Sharp received lumbar epidural injections and bilateral L4-5 facet joint blocks at St. Joseph Hospital. R. at 548-549, 588, 598-599, 604-605, 654, 703-704, 713-714, 727-728, 776-777, 797-798. On March 11, 2008, Sharp returned to the Indiana Spine Group and described limited relief from the lumbar injections. R. at 585, 597. Repeat injections were postponed, and Sharp was instead prescribed Soma. *Id.* Sharp again returned to the Indiana Spine Group on March 25, 2008, and similarly described limited relief from his injections and persistent lumbar pain. R. at 596. Although additional injections were recommended, *Id.*, Sharp declined further injections and was not authorized to obtain additional pain medications. R. at 611.

Sharp began treatment with Dr. Alnasir Virjee ("Dr. Virjee") on July 15, 2008. R. at 821. Dr. Virjee noted continued spinal tenderness in August 2008, R. at 820, and prescribed refills for Sharp's medications. R. at 803-819, 873.

On January 19, 2010, Sharp reported to Dr. Virjee that his back pain was getting worse. R. at 867. Dr. Virjee noted that Sharp's injections had been unsuccessful and that Sharp was not a surgical candidate. *Id.* Dr. Virjee further noted that Sharp was unable to sleep in a bed and could not sit or stand for prolonged periods. *Id.*

On May 5, 2010, Dr. Virjee completed a Statement of Medical Condition for the Food Stamp and Temporary Assistance for Needy Families Programs form based on Sharp's medical condition. R. at 880. Dr. Virjee checked a box indicating that Sharp was "unable to work" and wrote that Sharp could not walk for more than half a block and was restricted to lifting ten pounds. *Id.* Dr. Virjee attributed these limitations to Sharp's

degenerative disc disease.  *Id.*  Dr. Virjee assessed Sharp's prognosis as fair to poor, and further indicated that Sharp was not a candidate for a surgical spinal procedure.  *Id.*

### 2. Social Security Administration Consultative Exams

On May 9, 2008, Dr. Shuyan Wang ("Dr. Wang")[2] performed a consultative exam on Sharp, at which Sharp described worsening back pain.  R. 611-617.  Sharp exhibited a slow wide-based gait, successfully walked on his heels and toes for a couple of steps, slowly tandem walked, showed the ability to stand on each individual leg independently, and squatted one-third of the way down when holding on to an object.  R. at 613-15, 617.  Sharp had no cervical tenderness but did have tenderness in his lumbar spine.  R. at 614.  Sharp further showed a full range of motion in his elbows, wrists, knees, and ankles and a limited range of motion in his cervical and lumbar spine, shoulders, and hips.  R. at 614-615, 617.  Sharp was able to complete straight leg raises at ninety degrees.  R. at 614.  Dr. Wang described Sharp's effort as "questionable" during certain portions of the examination.  *Id.*

Dr. Wang diagnosed chronic low back pain with leg pain, lumbar degenerative disc disease and facet arthropathy with possible intermittent radiculopathy, a history of bilateral elbow tendinitis, peptic ulcer disease, and a history of pneumonia.  R. at 615-616.  Dr. Wang indicated that Sharp could work for four hours per day in a light duty job with lifting and carrying of up to ten pounds, standing and walking for less than twenty minutes per hour, and without bending or squatting.  R. at 616.  Dr. Wang also found that

---

[2] In his Brief, Sharp referred to "Dr. Shuyan Yang," rather than Dr. Wang.  Based on Sharp's description of the consultative exam opinion of "Dr. Shuyan Yang" and the record presenting Dr. Wang findings, the Court infers that Sharp intended to refer to Dr. Wang's opinions regarding Sharp's medical condition.

5

Sharp could use his hands for fine manipulation and hand function work, could use his right leg for operating foot controls in a position with intermittent sitting (but his left leg was limited for operation of foot controls), and could work around machinery and drive automotive equipment. *Id.* Dr. Wang stated that Sharp may not be able to perform overhead lifting, climbing, and should probably avoid cold and damp environments as well as exposure to dust. *Id.* Dr. Wang specifically noted that Sharp was not a candidate for back surgery, was not taking any pain medications, and needed to follow up with treatment. *Id.* Because of his lack of treatment, Dr. Wang wrote that Sharp "may need to be reevaluated after additional treatment." *Id.*

Sharp underwent a second consultative examination with Dr. Rupen Amin ("Dr. Amin") on June 18, 2009. R. at 706-709. Sharp reported that he could walk half of a block at a time, stand ten minutes, climb five-to-six steps, and lift ten pounds in either arm. R. at 706. On physical examination, Sharp exhibited a normal gait and a normal tandem gait, as well as normal sensation, except for decreased sensation in his left lower extremity. R. at 707-708. Dr. Amin also observed that Sharp's range of motion for his cervical spine, shoulders, elbows, wrists, knees, hips, and ankles was normal or near normal. R. at 707-709. Sharp exhibited a limited range of motion in his lumbar spine but without tenderness. *Id.* Dr. Amin concluded that Sharp suffered from low back pain. R. at 708.

Sharp appeared for a third consultative examination with Dr. Michael Johansen ("Dr. Johansen") on January 23, 2010. R. at 828-30. Sharp stated that he could walk half of a city block, stand for ten minutes, and sit for up to sixty minutes. R. at 828. Upon examination, Sharp appeared to be in no acute distress, exhibited a slow and deliberate

6

gait with normal station, could not squat fully, and walked in a slightly hunched posture with shorter strides. R. at 829. Sharp was able to tandem, heel, and toe walk without difficulty and could get on and off the examination table without difficulty, but he could not complete a full squat. R. at 829. Sharp had full range of motion in his cervical spine, shoulders, elbows, wrists, knees, and ankles, but his range of motion was limited in his lumbar spine. R. at 830. Sharp's straight leg raising was also negative. R. at 829. Sharp's extremities were normal with full strength and full ranges of motion, except for a slightly diminished range of motion in hip flexion. R. at 829-30.

State agency medical consultant Dr. Fernando R. Montoya ("Dr. Montoya") reviewed all of the evidence available on June 2, 2008, and found that Sharp could lift and carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk for two hours, and could sit for six hours in an eight-hour workday. R. at 618-625. Additionally, Dr. Montoya opined that Sharp could never crawl or climb ladders, ropes, and scaffolds but could perform all other postural activities on an occasional basis. R. at 620. Dr. Montoya described Sharp's alleged limitations as disproportionate to his treatment, particularly as surgery was never recommended and his doctors initially limited injections. R. at 624. Dr. Montoya further noted Sharp's questionable efforts with Dr. Wang. R. at 623-624.

On July 8, 2009, State agency medical consultant Dr. J.V. Corcoran ("Dr. Corcoran") reviewed the evidence in the file, including the consultative examination performed by Dr. Amin, on June 18, 2009, and opined that Sharp could perform light work without climbing ladders, ropes, and scaffolds and could occasionally perform all other postural activities. R. at 744-751. Dr. Corcoran indicated that Sharp should avoid

7

concentrated exposure to wetness and workplace hazards. R. at 748. Like Dr. Montoya, Dr. Corcoran described Sharp's allegations as disproportionate to the medical evidence. R. at 749.

State agency medical consultant Dr. F. Lavallo ("Dr. Lavallo") also reviewed Sharp's file on February 4, 2010, which included the latest consultative examination from Dr. Johansen on January 23, 2010, and opined that Sharp could perform medium work with occasional crawling and climbing of ladders, ropes and scaffolds, and frequent performance of all other postural activities. R. at 831-838. A fourth State agency medical consultant, Dr. J. Sands, reviewed the evidence in the file on May 10, 2010, and affirmed Dr. Lavallo's February 4, 2010, findings. R. at 878.

### C. RELEVANT ASPECTS OF THE ALJ'S DECISION

The ALJ found that Sharp had not engaged in substantially gainful activity since his application date of October 14, 2009. R. at 47. The ALJ also determined that Sharp suffered from a severe impairment of degenerative disc disease of the lumbar spine. R. at 48. The ALJ further found that Sharp suffered from a non-severe left knee injury that would not impose more than a mild limitation on his ability to perform basic work functions. *Id.*

The ALJ concluded that Sharp did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* In making this conclusion, the ALJ considered Sharp's condition under Listing 1.04, Disorders of the Spine. *Id.* The ALJ found that Sharp's impairments did not meet the criteria of Listing 1.04 because they did not compromise a nerve root or the spinal cord

with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis that prevented him from ambulating effectively. R. at 49.

After considering the entire record, the ALJ determined that Sharp had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 416.967(b). R. at 51. The ALJ found that Sharp could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and could have frequent exposure to wetness, moving mechanical parts, and high, exposed places (as defined by the Selected Characteristics of Occupations). *Id.* The ALJ also found that Sharp could understand, remember, and perform work tasks at a GED Reasoning Level 02 (as defined in the Dictionary of Occupational Titles); could perform work that occasionally requires reading and writing; and can have frequent contact with the general public and coworkers. *Id.* The ALJ further found that Sharp could perform productive work tasks for up to an average of 98-100% of an eight-hour work day, not including typical morning, lunch, and afternoon breaks. *Id.*

In determining Sharp's residual functional capacity, the ALJ deemed Sharp's testimony, and the third party testimony of Sharp's wife, partially credible because his alleged limited daily activities could not be objectively verified with a reasonable degree of certainty and could not be objectively attributed to his medical condition. R. at 55. The ALJ further reasoned that the extent of Sharp's alleged symptoms are not supported by the medical record. *Id.*

When reviewing Dr. Virjee's medical records, the ALJ gave no weight to Dr. Virjee's opinion that Sharp was "unable to work" in Sharp's Statement of Medical Condition for the Food Stamp and Temporary Assistance for Needy Families Programs form because

the opinion was made through a check box format without further facts, analysis, or rationale and because determinations as to one's ability to work are reserved for the Commissioner. *Id.* The ALJ also gave little weight to Dr. Virjee's other opinions concerning Sharp's functional limitations because his opinions were based solely on his diagnosis of degenerative disc disease of the lumbar spine, without any supporting clinical observations, analysis, or rationale. R. at 56. The ALJ also stated that Dr. Virjee's treatment notes "are largely unremarkable, recording symptoms but no meaningful clinical observations." *Id.*

The ALJ also distributed weight to the opinions of the state disability determination medical professionals to define Sharp's residual functional capacity. *Id.* The ALJ gave only "[s]ome weight…to the state disability determination medical professionals' physical and mental assessments" because these doctors could not review Sharp's full medical record as it was presented at the hearing and could not discuss the impairments with Sharp. *Id.* However, the ALJ gave "[s]ignificant weight…to the state disability determination medical professionals' physical assessments because their conclusions regarding the nature and severity of [Sharp's] impairments are deemed expert opinion evidence from a non-examining source and their opinions are consistent with the treatment record." *Id.*

The ALJ adopted the VE's opinion that Sharp could not perform his past relevant work as a store laborer. R. at 57. The ALJ further adopted the VE's opinion that a person with Sharp's residual functional capacity, age, education, and work experience could perform jobs as a Housekeeping Cleaner, Electronic Assembler, and Hand Cutter and Trimmer, all of which were available in significant numbers in the national economy. R.

at 58. Accordingly, the ALJ concluded that Sharp was not disabled at any time since October 14, 2009. R. at 59-60.

## II. **STANDARD**

To be eligible for Disability Insurance Benefits ("DIB") or SSI,[3] a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

III. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

IV. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

V. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d

---

[3] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1505 *et seq.* The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq.* For convenience, only the DIB regulations are set forth herein.

11

386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234.

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of his analysis enables the Court to "assess the validity of the agency's ultimate findings

and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III. ANALYSIS

Sharp asserts that the ALJ failed to give sufficient weight to the medical opinions presented by Dr. Virjee and Dr. Wang. Dkt. No. 16 at 10-14. With respect to Dr. Virjee, Sharp asserts that the ALJ did not provide enough reasoning for giving Dr. Virjee's treating source opinion little weight when such opinions are typically given special consideration. *Id.* at 11-14. The Commissioner argues that the ALJ was entitled to discredit Dr. Virjee's treating source opinion because the ALJ articulated good reasons for doing so, such as when the treating source's opinion is not well-supported by the medical record. Dkt. No. 19 at 14-17.

The Court agrees with Sharp that the ALJ failed to adequately explain his reasoning for discounting Dr. Virjee's treating source opinion. Treating source opinions are generally entitled to greater weight than other medical opinions. *See* 20 C.F.R. § 404.1527(c). Although the Appeals Council previously required the ALJ to provide greater explanation for his distribution of weight to Dr. Virjee when remanding this case on January 17, 2013, R. at 193-194, the ALJ still did not provide a sufficient explanation to allow the Court to trace the path of his reasoning for discrediting Dr. Virjee's opinions. The ALJ stated that he found Dr. Virjee's opinions to be unreliable because they lacked support from clinical observations, analysis, or rationale. R. at 56. He did not demonstrate that Dr. Virjee's opinions were inconsistent with the medical record; in fact, Dr. Virjee's diagnosis of degenerative disc disease appears to be consistent with other aspects of the medical record. *See* R. at 600 (diagnosis of degenerative disc disease made by Indiana Spine Group). Without further explanation, the ALJ failed to provide "an

'accurate and logical bridge' between the evidence and [his] conclusion" that Dr. Virjee's treating source opinion was entitled to only little weight. *Craft*, 539 F.3d at 673 (quoting *Young*, 362 F.3d at 1002).

Sharp also argues that the ALJ failed to evaluate Dr. Wang's opinion when determining Sharp's residual functional capacity. Dkt. No. 16 at 10, 14. The Commissioner states that the ALJ properly chose to credit the opinions of the four State agency medical consultants over the opinion of Dr. Wang, in part because Dr. Wang's examination of Sharp was completed on May 9, 2008, and because Dr. Wang noted that Sharp "'may need reevaluated after additional treatment.'" Dkt. No. 19 at 17-20 (quoting R. at 616).

The Court concludes that the ALJ did not adequately explain the weight he attributed to each of the State consultative examiners, including Dr. Wang, and State agency medical consultants that evaluated Sharp's medical condition. The ALJ presented internal inconsistencies in his opinion when describing the weights given to all of the "state disability determination medical professionals." The ALJ first stated that only "[s]ome weight is accorded to the state disability determination medical professionals' physical and mental assessments" because these doctors could not see Sharp's full medical record as it was presented at the hearing and could not discuss the impairments with Sharp. R. at 56. But in the very same paragraph, the ALJ also stated that "[s]ignificant weight is accorded to the state disability determination medical professionals' physical assessments because their conclusions regarding the nature and severity of [Sharp's] impairments are deemed expert opinion evidence from a non-examining source and their opinions are consistent with the treatment record." *Id*. It is unclear from these

14

two statements which, if any, of the consultative examiners' and medical consultants' opinions, including Dr. Wang's opinion, were given greater weight than others. Therefore, the Court is unable to trace the ALJ's logic in his weight distributions to the various consultative examiners and medical consultants that opined on Sharp's medical condition.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court concludes that Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, erred in finding that Sharp was not disabled under Title XVI of the Social Security Act, 42 U.S.C. § 1382(c) and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 1382(c). The Court will enter judgment accordingly.

IT IS SO ORDERED this 15th day of December, 2016.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov